CLAUDE K. CANTWELL, Appellant, v. T. F. CREMINS and MASSACHUSETTS BONDING & INSURANCE COMPANY, a Corporation.—149 S. W. (2d) 343.

Division Two, April 3, 1941.

*Wilbur C. Schwartz, Thomas B. Curtis* and *Orville Richardson* for appellant.

838

*Hay & Flanagan* and *Robert W. Herr* for T. F. Cremins; *James J. Seeley* for Massachusetts Bonding & Insurance Company.

WESTHUES, C.—Appellant, Cantwell, filed this suit against respondents, T. F. Cremins and Massachusetts Bonding & Insurance Company, a Corporation, to recover damages to appellant's truck, alleged to have been sustained in a collision between the truck and a car driven by Cremins while engaged in discharging his duties as an agent and servant of the bonding company. Cremins filed a counterclaim in which he sought damages in the sum of $40,000 for personal injuries alleged to have been sustained in the same collision. At the close of all the evidence plaintiff dismissed his suit against Cremins without prejudice. The case was submitted to a jury on plaintiff's claim against the bonding company and Cremins' claim against plaintiff Cantwell. The jury returned a verdict in plaintiff's favor and against the bonding company in the sum of $750, and in plaintiff's favor and against the defendant Cremins on the latter's counterclaim. Each defendant filed a motion for new trial. These motions were sustained by the trial court. The reason given was that the trial court deemed instructions one and three, given at plaintiff's request, to be erroneous, whereupon plaintiff appealed.

Respondents have not briefed any other point to sustain the action of the trial court. We are therefore confined to a consideration of the question of whether instructions one and three were erroneous. The correctness of the instructions must be determined in the light of the issues presented at the trial. It will therefore be necessary to briefly refer to the pleadings and the evidence. The collision occurred on July 13, 1937, at about 10:00 A. M., at a point north of Cairo, Illinois, on highway number fifty-one. The weather was fair and the pavement dry. The truck was traveling north and was being driven by Glen Gray, an employe of plaintiff Cantwell. The defendant Cremins was traveling south in a 1937, Plymouth. Plaintiff in his petition charged as an act of negligence that the defendant was driving his car on the left or east side of the roadway. The defendant Cremins in his counterclaim charged that the truck was on the wrong or west side of the roadway. Plaintiff and defendant, Cremins, each pleaded a statute of Illinois which provided as follows:

"'Drivers of vehicles proceeding in opposite directions, except as provided in Sec. 151 (ante), shall pass each other to the right and upon roadways having width for not more than one line of traffic in each direction, each driver shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible.'"

At the point of collision the roadway was straight and continued so for some distance both north and south. It was paved with brick for a width of eighteen feet and ten inches and a black line marked the center of the roadway. The evidence does not disclose that any other vehicle on the highway had any connection with the collision.

The portion of instruction one which was deemed erroneous in substance informed the jury that under the Illinois law it was the duty of Cremins, when meeting plaintiff's truck, to drive his car on his own right-hand side of the highway, as nearly as possible, and give such truck one-half of the main traveled portion of the roadway, as nearly as possible, and if Cremins failed to do so he was negligent. The instruction further informed the jury in substance that if they found that such negligence, if any, on part of Cremins, directly caused the collision and damage, if any, to plaintiff's truck, and that plaintiff was in the exercise of ordinary care, then a verdict for plaintiff was authorized. Instruction number three concerned the counterclaim of Cremins. The fore part of this instruction is substantially the same as instruction number one wherein the jury was told that it was the duty of Cremins to drive on his right-hand side of the road and that if he failed to do so he was negligent. The instruction concluded, that if such negligence, if any, either directly and solely caused, or directly contributed to cause the collision, then Cremins could not recover on his counterclaim.

Respondents in their brief contend that the instructions are erroneous because they excluded from the consideration of the jury any possible excuse or reason Cremins may have had for being on the wrong side of the road. If the evidence justified any theory upon which Cremins could have been excused for being on the wrong side of the road the instructions would be subject to the criticism made. [See 45 C. J. 962, sec. 517.] This court so held in Collins v. Beckmann, 79 S. W. (2d) 1052, l. c. 1055 (2). In that case the party charged with negligence testified that he swerved to the left to avoid a collision. If a driver of a car is confronted with an emergency not of his own creation, (45 C. J. 966, sec. 519) and as an avenue of escape swerves his car to the left and onto the wrong side of the road, he may be excused. However, we do not find any evidence to justify such a finding in this case. Cremins claimed no excuse or justification for being on the left side of the road. He emphatically denied that he drove his car to the left of the center of the roadway. Note his evidence:

"I drove south on Highway 51 and was about five miles south of Anna at the time of this accident. As I came over this hill I saw the truck for the first time about 700 feet away. I was going down a slight grade to the south and was traveling about forty to forty-five miles an hour. The truck was coming between twenty and thirty miles an hour. I was on my right side of the highway and the truck was on its right-hand side. I continued in that position until I was about seventy-five feet away from the truck.

"Q. And then what took place? A. When he veered over to my side of the highway, three or four feet; I jammed on my brakes and pulled to the right.

"There is a railed fence along the side of the highway and I was traveling about three or four feet west of the center line of the road. When I applied my brakes I slackened my speed.

"Q. And what transpired then, the next thing you know? A. Well, I jammed on my brakes and pulled to the right and there was a crash.

"Q. Is that the last thing you remember? A. That is the last thing I remember.

"Q. As he came over onto your side of the road did he slow up any, or stop, as far as you could tell; was he still moving forward? A. He was still coming toward me.

"Q. What is the next thing you remember after that, Mr. Cremins? A. I woke up in a hospital."

On cross-examination he testified as follows:

"Q. Did you see his truck and your machine come in contact? A. Yes.

"Q. Now, you saw that, and when you were seventy-five feet away from him and he was three or four feet over on your side of the road did he continue to go over to your side of the road? A. Well, he didn't go much farther, because we had the crack-up right then. There wasn't enough time to help us.

"Q. Then, as I understand it, he—when you had the crack-up he was three or four feet on your side of the road, that is, three or four feet west of the black line? A. Yes."

The theory upon which a recovery was based on Cremins' counterclaim and in defense of plaintiff's claim for damages was that the truck was over on the left side of the roadway and that that was the sole cause of the collision. No evidence was introduced which would have authorized a finding that Cremins was justified or excused for driving on the left side of the highway. Cremins or the bonding company did not offer an instruction upon that theory. The instructions are therefore not subject to the criticisms made.

Next respondents say that the instructions were erroneous because the jury was directed to find Cremins guilty of negligence as a matter of law if the jury found he drove his car on the left-hand side of the roadway and failed to give the truck one-half of the main traveled portion of the roadway as nearly as possible. Respondents, citing a number of Illinois cases in support thereof, urged that under the Illinois rule a violation of a statute is not negligence *per se* but only evidence of negligence. The rule was stated in a recent case, Gourley v. Chicago & E. I. Ry. Co., 295 Ill. App. 160, l. c. 170, 171, as follows:

"Considerable space is devoted by counsel on both sides to the citation of authorities and argument relating to the question whether violation of a statute constitutes negligence *per se*. It would be impossible within the space limitations of this opinion to review all these cases, but from a careful reading and examination of the authorities

we are satisfied that, under the rule enunciated in recent decisions in this State, violation of a law at the time of an accident merely constitutes evidence of negligence; there always remains the question of fact to·be determined by the court·or jury whether the illegal act is the proximate cause of the injury; the mere fact, if it be a fact, that a party has violated the law at the time he was injured will not bar his recovery unless the unlawful act in some way proximately contributed to the accident in which he was injured. It was so held in Jeneary v. Chicago & Interurban Traction Co., 306 Ill. 392, 395.''
[See also Partridge v. Eberstein, 225 Ill. App. 209; 45 C. J. 720, sec. 103, page 724, sec. 107.]   The question of fact of whether the negligence of Cremins was the proximate cause of the injury and damage was by the instructions left to the jury.   We are of the opinion that the instructions conformed to the law.   The rule in both Illinois and in Missouri and in most of the states is that a violation of a statute is evidence of negligence.   However, to authorize a recovery based on such negligence it must have caused the injury for which damage is sought.   [See on this subject Corpus Juris, above cited, and Evans v. Klusmeyer, 301 Mo. 352, 256 S. W. 1036; Amos v. Term. Railroad Assn. of St. Louis·(Mo. App.), 142 S. W. (2d) 787, l. c. 789 (1-4); Beck v. Wurst Coal & Hauling Co., 293 S. W. 449, l. c. 450 (2, 3).] Even if, as respondents claim, under the Illinois rule a violation of a statutory traffic regulation is merely evidence of negligence or a prima facie showing of negligence, still the instructions in view of the issues as they were presented in this case were not erroneous. There was not a scintilla of evidence in the record tending to justify Cremins in driving to the left of the center of the roadway.   He denied doing so.   Whether he did or not was left to the jury to determine from the evidence.   If Cremins was driving on the left side of the roadway, without any justification, then such conduct constituted negligence. In Huddy's Cyclopedia of Automobile Law, Vols. 3-4, page 167, we find the following comment on the law as found in various states:

''But generally, as the violation is only presumptive evidence of negligence, the guilty party is given an opportunity to rebut the presumption, and he may rebut the presumption by showing some good excuse for traveling in violation of the law of the road.   But if no excuse is presented for the apparent violation, the evidence of wrongful conduct is sufficient for a finding of negligence.   In fact, an unexplained or unexcused violation may be deemed conclusive on the issue, and the court may in some cases dispose of the question as a matter of law.   In many of the decisions which hold that the violation of a traffic regulation is negligence *per se*, the intention of the decision is that the violation is negligence *per se*, unless some emergency or excuse can be furnished for the violation.''   [See also Connole v. East St. Louis & S. Ry. Co., 340 Mo. 690, 102 S. W. (2d) 581, l. c. 590 (21-23).]

The driver of the truck testified for plaintiff. His evidence as to the collision was as follows:

"I was driving about twenty-five miles per hour when the accident occurred. As I was coming up the grade I saw a car come over the hill at a pretty high rate of speed. He was right on the black line 'and it seemed like he got right onto me before he seen me, and he attempted to pull away and lost control of the car and came right back into the truck.' His left front fender and radiator hit my left front wheel and fender and knocked me almost directly east off into a ditch. At the time of the accident I was driving about six or eight inches from the east edge of the slab and had driven just north of the east guard rail. At the time of the accident I was almost stopped, but the Plymouth was still going about sixty miles per hour, or better."

Eyewitnesses corroborated the truck driver's evidence. The damage to the truck and the Plymouth, as well as the skid marks on the roadway, also supported the evidence of the truck driver. Photographs of both the truck and the car as they appeared after the collision were introduced in evidence. These photographs disclosed that the point of impact on the Plymouth included the radiator, left front fender and left front wheel, and the point of impact on the truck was on the left side, wrecking principally the front wheel, fender and headlight. The position of the car and truck after the collision also gave aid to plaintiff's theory. Note that the truck before the collision was traveling north. It stopped headed in a northeast direction in a ditch with the left rear wheel on the pavement. The Plymouth, which was traveling south before the collision, was headed in a southeast direction after the impact with the front end thereof against the left side of the body of the truck.

The sharp and main issue at the trial was whether the driver of the truck or the driver of the Plymouth violated the statute of Illinois above referred to and relied on by both plaintiff and defendant Cremins. The driver of the truck or the driver of the car did not claim any excuse for being on the left side of the road. Each claimed that he was not. The evidence, as viewed from the record, overwhelmingly supported plaintiff's theory. Under the theory of the case as tried the instructions given were proper, and therefore the trial court erred in sustaining the motions for new trial.

The judgment of the trial court is therefore reversed with directions to the trial court to set aside the orders granting the defendants a new trial, to reinstate the verdict and to enter judgment thereon. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.